**Ben BOGAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–91–227 CR.**

Court of Appeals of Texas, Beaumont.

Sept. 16, 1992.

Douglas M. Barlow, Beaumont, for appellant.

Tom Maness, Dist. Atty., Beaumont, John R. DeWitt, Asst. Crim. Dist. Atty., Beaumont, for the state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

This is an appeal from a conviction for the felony offense of Arson. The trial took place August 28–29, 1991. Following the guilty verdict by the jury, the trial court assessed appellant's punishment at ten (10) years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Imposition of the sentence was suspended by the trial court and appellant was placed on probation for ten (10) years. The trial court also imposed a fine of $2500. On appeal, this Court is presented with four points of error, *viz:*

> Point of Error One: The evidence was insufficient to support the conviction in that the evidence failed to establish that appellant set the fire.
> Point of Error Two: The trial court erred in admitting evidence of an extraneous offense, to wit: Assault.
> Point of Error Three: The trial court erred in admitting evidence of the results of investigations in other arson cases.
> Point of Error Four: Reversible error occurred when the prosecutor made an improper argument before the jury.

Appellant's initial point complains of insufficient evidence to sustain the conviction, therefore a recitation of the facts presented to the jury is in order. On April 25, 1990, a fire completely destroyed the home of appellant and his wife, Janet Dorene Bogan. Because of marital difficulties, Mrs. Bogan had moved out of the house on April 15, 1990. On that date, Mrs. Bogan moved in with her daughter by a previous marriage, Terri Petitt. Mrs. Bogan returned to her house the next day to gather some personal belongings. She testified that a great many items belonging to her were left in the house. Mrs. Bogan further testified that these items were her separate personal property acquired prior to her marriage to appellant. These items were totally lost in the fire.

During the day of April 25, 1990, Mrs. Bogan had several telephone conversations with appellant. During these conversations, appellant attempted to get Mrs. Bogan to move back home with appellant. Appellant also wanted Mrs. Bogan to go out to dinner with him that evening. For whatever reason, appellant and Mrs. Bogan did not make connections for dinner on the evening of April 25. At approximately 9:00 p.m. that evening, Mrs. Bogan returned to her daughter's house after having had dinner with a lady-friend. As Mrs. Bogan started to exit her vehicle, appellant approached, opened the driver's door and pulled Mrs. Bogan out. Appellant demanded to know if Mrs. Bogan was going home with him. Mrs. Bogan told appellant that she was not going home with him. Appellant replied, "Well, then your (sic) a dead motherfucker." Appellant then began to strike Mrs. Bogan about the head and upper body and attempted to drag Mrs. Bogan down the driveway to appellant's truck.

Mrs. Bogan testified that at one point during this violent encounter, appellant stated, "You're dead. You may as well stop fighting. You're not going to—You either come home or you are not going to have one to come home to." Mrs. Bogan further testified that appellant stated that he was "going to burn the damned house down...." As appellant shoved Mrs. Bogan into his truck, Mrs. Bogan managed to engage the truck's horn. The sound of the horn caused Mrs. Bogan's daughter, Terri, to run out of the house and rescue Mrs. Bogan. Mrs. Bogan was then able to run into her daughter's house.

On cross-examination, Mrs. Bogan testified that at the time of the fire, the house was paid for, and that there was no insurance coverage on the house. She further stated that no insurance benefits had been paid to her or appellant to her knowledge. Furthermore, the house was not located within the city limits of any city; and the land upon which the house was situated was owned by appellant and Mrs. Bogan.

Terri Petitt testified that when she heard the horn, she looked out the door and observed appellant's truck parked behind her mother's car. Ms. Petitt stated that she ran out of her house and saw appellant hitting her mother with his fist. Ms. Petitt managed to pull appellant off her mother and got her mother out of the truck. Ms. Petitt described appellant as "out of control. He was out of breath. He had blood on him." And although Ms. Petitt did smell alcohol on appellant's breath, appellant did not appear intoxicated to her. Ms. Petitt stayed outside with appellant while her mother went into the house. Ms. Petitt talked to appellant in an attempt to calm him down. During the course of their conversation, appellant gave Ms. Petitt a message to give to Mrs. Bogan: "He had told me to tell her if she wasn't home in 24 hours she was dead and that he said that he was going to burn the house down. And when I asked him why he wanted to say something like that he said, [']To leave her penniless and on the streets.[']" Appellant then left Ms. Petitt's house at approximately 9:40 p.m. Ms. Petitt testified that the drive from her house located on Mapes Street in Beaumont, to appellant's house on Walden Road was less than a ten minute drive.

Appellant's brother-in-law, Eugene Lee, testified that he and his wife, the sister of appellant, live approximately a third of a mile from appellant's house on Walden Road. On the night of April 25, Mr. Lee and his wife reported the fire to the China Fire Department at approximately 10:05 p.m. The Lees also walked over to the scene of the fire as they were concerned that appellant may have been in the house at the time of the fire. The firefighters did not find anyone in the charred remains of the house. Mr. Lee testified that he did not see appellant until around 9:00–10:00 a.m. the next morning when appellant came by to get keys to a pickup truck. Mr. Lee could not remember if appellant responded in any way regarding the fire. The Lees did inform appellant that the authorities were looking for him (appellant).

Through their next witness, Glenn Hamm, a former Investigator for the Jefferson County Sheriff's Office, the State introduced into evidence a statement by appellant given to Sheriff's Deputies the afternoon of April 26, 1990 at the Sheriff's Office. The statement is essentially exculpatory in nature with the following portions being applicable to the instant discussion:

> Upon returning to the residence I backed my Ford pickup truck into the garage because I had some equipment in the back that I didn't want to get wet.
>
> As I opened the back door of my house which leads into the wash room, I saw that the house was on fire. Flame (sic) leaped out at me and I turned and ran. The fire had burned some of my hair on my face and arms. From there I ran over to my stepfather's house, which is next door to my residence to call the Fire Department. My stepfather is in a nursing home and no one lives there. I attempted to call the Fire Department to let them know that my house was on fire but the phone would not work. I don't know how long the phone has been out. At that time I passed out. I had been drinking whiskey since about 6:00 p.m. when I went home to change clothes. I had probably drank about 5 or 6 drinks.
>
> I woke up the next morning approximately 10:00 a.m. and went by my house. I looked around and surveyed the damage. I then got on my stepdads (sic) tractor and drove to my sister's house, which is located just a short distance from my house, and got the keys to my stepfather's truck. I then drove to Autolet (sic) Tractor and purchased a part. After I got through working I went by my sister's house again and she told me that Deputies from the Sheriff's Department

had been by looking for me. Thats (sic) when I decided to call and I spoke with Deputy John Vickery.

Deputy York Hamm and John Vickery spoke with me about my house burning, and after being read my rights, I spoke with them about what I had been doing that evening and agreed to give a statement to that affect (sic). I have told Depty (sic) Hamm and Vickery that I did not burn my house down. I do not know who could have done this. Deputy Hamm and Vickery have informed me that someone has said that I made the statement the evening that my house burned down, that I was going to burn the house. I did make that statement, but I had been drinking and I sometimes say things that I don't mean. I have not given anyone permission to burn my house.

Former Investigator Hamm testified that on the night of the fire, he was at the scene for about three to four hours gathering evidence and investigating the fire's origin. Hamm identified a burned plastic container recovered from the living room of the burned house as containing the odor of gasoline. Hamm further identified State's Exhibit 10 which was the liquid taken from the burned plastic container. A laboratory analysis of the liquid determined it to be gasoline.

Hamm went on to testify to the events surrounding the taking of the statement of appellant. Appellant contacted the sheriff's office around noon to 1:00 p.m. the day after the fire. The investigators informed appellant that they wanted to speak to him. Appellant arrived at the sheriff's office at approximately 1:30 p.m. Appellant was read his Miranda rights and thereafter waived those rights and agreed to talk to the investigators. The above referenced statement was taken. The investigators then took photographs of singed hair on appellant's head, eyebrows, and arms. When asked about appellant's attitude during the interview, Hamm related that appellant did not seem concerned about his house having burned. Hamm added:

I was rather surprised. He seemed pretty calm through the whole interview process, statement process. He never had any questions put to us as far as did we know who had burned his house. He seemed pretty together for a person who's (sic) house had just burned down.

On cross-examination, Hamm admitted that there were no witnesses who saw appellant set the fire, nor were there any witnesses *after* the fire that appellant told that he burned the house.

The State's final witness was Gerald Brown, an expert in arson investigation. Brown stated that in his opinion, the fire had been deliberately set by using the flammable liquid, gasoline. Brown testified that his investigation revealed two points of origin of the fire; one point located in the living room area of the house and another point located in the garage. Brown was then asked to give an opinion with regard to the description of events recounted by appellant in his statement:

Q. (the State) With what we—what you have told us today, sir, in reference to the two points of origin, could the defendant, as he said in his statement, have backed his truck up into the garage area, gotten out, as I'm demonstrating on State's Exhibit Number 7 or illustrating, gotten out of his truck, walked into— walked to the door of the washroom or that kitchen area safely and still be alive today (Indicates)?

A. (Brown) Not—

    (Appellant's objection overruled by trial court.)

Q. You may answer the question, sir.

A. Could he have safely walked through that area? In my opinion, no.

Q. Why is that, sir?

A. Because, in my opinion, there were two various serious fires occurring at the same time from separate points of origin. That garage from the—from the indications there to me would have been on fire totally.

Q. Fully involved?

A. Fully involved, as we say, yes.

Q. In fact, the moment he says that he backed his truck into the that (sic) ga-

rage would he or would he not have known that the garage was on fire?

A. He would have to have noticed it. Yes.

Q. So a person would not have to walk—could not be able to walk to the door of that washroom?

A. Not in my opinion.

Q. And that's your expert opinion, sir?

A. Yes, it is.

Q. Have you seen people who have been singed, burned by fires, sir?

A. Yes, I have.

Q. If you take a look at State's Exhibit Number—Numbers 13 through 19, which are before you, photographs of the defendant—Yes, sir.

A. (Examines).

Q. Could those—Could those singes on the defendant, eyebrows, hair, be caused by him igniting a fire?

A. Yes, it could.

Q. Are you telling the Ladies and Gentlemen of this jury that, in fact, if the defendant had walked into the garage, as he so states in his statement, State's Exhibit Number 12, would he be alive today?

A. No, he wouldn't.

In reviewing evidence sufficiency, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Matson v. State,* 819 S.W.2d 839 (Tex.Crim.App.1991). *Jackson* clarifies this appellate concept by further providing:

> This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evi-

dence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. (emphasis theirs)

*Jackson, supra* 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573.

■ In cases where some or all of the State's evidence is circumstantial, such evidence is not tested by a different standard of review than direct evidence, but a conviction based upon circumstantial evidence cannot be sustained if the evidence does not exclude every reasonable hypothesis other than the guilt of the defendant.[1] *Fuller v. State,* 827 S.W.2d 919 (Tex.Crim. App.1992). We find much guidance in the following language taken from *Russell v. State,* 665 S.W.2d 771, 776 (Tex.Crim.App. 1983), *cert. denied,* 465 U.S. 1073, 104 S.Ct. 1428, 79 L.Ed.2d 752 (1984):

> In circumstantial evidence cases it is not necessary, however, that every fact point directly and independently to the defendant's guilt. It is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Flores v. State,* [551 S.W.2d 364 (Tex.Cr.App.1977)] *supra; Mills v. State,* 508 S.W.2d 823 (Tex.Cr. App.1974); *Herndon v. State,* 543 S.W.2d 109 (Tex.Cr.App.1976). The rules of circumstantial evidence do not require that the circumstances should to a moral certainty actually exclude every hypothesis that the act may have been committed by another person, but the hypothesis intended is a reasonable one consistent with the circumstances and facts proved, and the supposition that the act may have been committed by another person must not be out of harmony with the evidence. *Jones v. State,* 442 S.W.2d 698 (Tex.Cr.App.1969); *Taylor v. State,* 87 Tex.Cr.R. 330, 221 S.W. 611, 615 (Tex.Cr. App.1920); *Flores v. State, supra.*

■ We fully recognize that the jury was provided with evidence, through appellant's written statement to Sheriff's Depu-

---

1. We recognize the fact that the use of the "reasonable hypothesis analytical construct" has been abandoned. *See, Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991). However, as the *Geesa* holding is not to be retrospectively applied, appellant's sufficiency point must be decided pursuant to the analytical construct. *Id.*

ties, that explained his actions on the night of the fire, and that the statement contained appellant's denial at starting the fire, intentionally or otherwise. We also recognize that the appellant called several character witnesses who fully vouched for appellant's truthfulness and veracity. The long established rule in Texas, however, is that the jury is the exclusive judge of the facts proven, the credibility of the witnesses, and the weight to be given to their testimony. *See,* TEX.CODE CRIM.PROC.ANN. art. 38.04 (Vernon 1979); *Sharp v. State,* 707 S.W.2d 611 (Tex.Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); *Hudson v. State,* 418 S.W.2d 813 (Tex.Crim.App.1967). Furthermore, the law provides that a jury may believe a witness even though the witness's testimony has been contradicted; and that a jury may accept any part of a witness's testimony and reject the rest. *Sharp, supra* at 614; *Jackson v. State,* 505 S.W.2d 916 (Tex.Crim.App.1974); *Dawson v. State,* 472 S.W.2d 775 (Tex.Crim.App.1971).

Finally, any appellate court examination of such a record must be guided by the principles contained in the following language taken from *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988):

> The court is never to make its own myopic determination of guilt from reading the cold record. It is not the reviewing court's duty to disregard, realign or weigh evidence. This the factfinder has already done. The factfinder, best positioned to consider all the evidence firsthand, viewing the valuable and significant demeanor and expression of the witnesses, has reached a verdict beyond a reasonable doubt. Such a verdict must stand unless it is found to be irrational or unsupported by ... the evidence, with such evidence being viewed under the *Jackson* light. Concrete application of the *Jackson* standard is made by resolving inconsistencies in the testimony in favor of the verdict. (footnote omitted)

■ With regard to the evidence in the instant case, we find that any rational trier of fact could have found each element of Arson, as charged, proven beyond a reasonable doubt. It is virtually conceded by appellant that the fire was deliberately set and that the house contained the separate property of Mrs. Bogan. Appellant's own statement places him at the house at the approximate time that the fire started. The key question is whether the jury could have inferred from the evidence that appellant started the fire, as there were no eyewitnesses as to how the fire started, nor did appellant make any incriminating statements at any time after the fire.

In his brief, appellant argues that the State's own expert witness, Gerald Brown, provided positive proof of appellant's innocence. The portion of Deputy Brown's testimony provided on page 6 of appellant's brief is taken entirely out of context. It does not stand for the proposition, as appellant claims, that appellant could not have started the fire in the garage and walked out of the garage alive under the conditions observed by Deputy Brown. Indeed, that entire portion of Brown's testimony, reproduced earlier in this opinion, rebuts the portion of appellant's written statement in which he claims to have backed his vehicle into the garage prior to discovering a raging fire, which singed the hair on his head and arms, inside his house. Deputy Brown also testified that the singed areas on appellant's body could have been caused by appellant himself igniting the fire.

The two cases relied on by appellant which apply and discuss the appellate standards of review with which we are also bound, *Baugh v. State,* 776 S.W.2d 583 (Tex.Crim.App.1989); and *Saenz Machado v. State,* 753 S.W.2d 252 (Tex.App.—Houston [1st Dist.] 1988), *pet. ref'd per curiam,* 767 S.W.2d 809 (Tex.Crim.App.1989); are distinguishable. In *Baugh,* the defense raised "a reasonable inference" with regard to the cause of the fire. An expert witness called by the defendant opined that there was not enough evidence present at the scene of the fire to make a specific determination as to the cause of the fire, and he believed the fire to be accidental. *Baugh, supra* at 585. The *Baugh* Court also found a lack of direct and circumstantial evidence to incriminate the defendant. Interestingly, the *Baugh* Court, in discuss-

ing the lack of circumstantial evidence in that case, made the following observation:

> There is also insufficient circumstantial evidence linking appellant to the fire. Appellant had not made any verbal threats to set a fire nor had his appearance indicated connection with a fire. Compare *Burrow, supra.*[2] (Evidence showed that the defendant was seen leaving the scene of the fire shortly after it had been set; after the fire the defendant was seen with singed hair and eyebrows; and prior to the fire defendant had threatened to either blow the house up or burn it down.)

*Baugh, supra* at 585. In a backhanded way, the Court of Criminal Appeals in *Baugh* seems to be saying that evidence of presence by the accused at, or leaving the scene of, a fire shortly after it has been set, along with evidence of the accused having singed hair and eyebrows, and the accused's prior threat to burn the premises in question constitutes sufficient evidence to sustain a conviction.

As for the *Saenz Machado* case, its distinguishing characteristic was the fact that another individual was also seen leaving the storage room in which the fire began. The Houston Court was unable to find that the hearsay statement linking the defendant to the fire was sufficient evidence to exclude every other reasonable hypothesis except that of the guilt of the defendant. *Saenz Machado, supra* at 254.

In the instant case, the record before us is clearly void of any theory of culpability other than that involving appellant as the person who set the fire. The appellant, through cross-examination, did provide evidence that apparently the most recent source of marital difficulty between appellant and Mrs. Bogan stemmed from problems that Mrs. Bogan's son, Douglas Askew, was having with the local police. Appellant attempted to provide a link between the fire and Douglas Askew, but all witnesses questioned about any possible connection between the two denied any knowledge of such a link or had never heard of Askew. Merely presenting an individual's name to witnesses who are then unable to connect the individual to the offense in any way does not raise an alternate hypothesis, reasonable or otherwise, of how the crime was committed. Appellant's first point of error is overruled.

■ Appellant's second point of error complains of the admission of the specific events surrounding appellant's assault of Mrs. Bogan on the night of the fire as being evidence of an extraneous offense. The record reflects that the appellant did not make his objection to Mrs. Bogan's testimony until well after the entire assault had been described. Appellant's objection was overruled. Appellant did not request a running objection to this line of questioning, nor did appellant make any objections to this evidence outside the jury's presence prior to its admission. In *Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App. 1991), the Court of Criminal Appeals detailed the proper procedure for preserving error in such instances:

> In general, TEX.R.CRIM.EVID. 103(a)(1) and TEX.R.APP.P. 52 govern preservation of error concerning the admission of evidence in criminal cases. Combined, these rules state that if, on appeal, a defendant claims the trial judge erred in admitting evidence offered by the State, this error must have been preserved by a proper objection and a ruling on that objection. The objection must be timely; that is, the defense must have objected to the evidence, if possible, before it was actually admitted. If this was not possible, the defense must have objected as soon as the objectionable nature of the evidence became apparent and must have moved to strike the evidence, that is, to have it removed from the body of evidence the jury is allowed to consider. The defense must have stated specifically the basis for the objection unless the particular ground was apparent from the context. The trial judge must have overruled the objection. If the judge refuses to rule on the objection, an objection to this refusal to rule is sufficient to preserve error in

2. 481 S.W.2d 895 (Tex.Crim.App.1972).

the admission of the evidence.... Error cannot be predicated upon a trial judge's ruling that admits or excludes evidence unless "a substantial right of the party is affected." Rule 103(a)(1) and Rule 52, supra.

In the instant case, the record reflects that when appellant did finally object to Mrs. Bogan's testimony about the assault, appellant's counsel stated, "Your Honor, at this point I have to object under Rule 404 as to the way that this testimony is going by the State. I think it's gone beyond to show scheme, motive or identity and is getting into extraneous offenses prohibited (sic) by 404(b), Your Honor." It is clear from the language of this objection and the circumstances surrounding it that this was not a timely objection. The nature of the evidence was clearly apparent when Mrs. Bogan was requested to narrate the events dealing with the confrontation with appellant in the driveway of her daughter's residence.

Appellant's brief also makes the same complaint of Ms. Petitt's testimony regarding her observations concerning the assault. However, as in the first instance, the record reflects that appellant's counsel waited too long before lodging his objection. With regard to the first two complaints contained in this point of error, under established case law, the rules of evidence and the rules of appellate procedure, appellant did not preserve error because his objection was not timely. Appellant permitted a detailed rendition of the assault to be elicited for the jury before making any type of objection with regard to "extraneous offense." We consider this as if no objection had been raised at all. Thus, appellant's complaint of the testimony of former Deputy Hamm, although appellant's trial objection was sustained, is of no consequence as the evidence had already been admitted before the jury without objection. *See also, Hudson v. State,* 675 S.W.2d 507 (Tex.Crim.App.1984). Point of error two is overruled.

Appellant's third point of error focuses on the following redirect examination of the State's arson expert, Gerald Brown:

Q. (the State) So in this case here the gasoline is the incendiary device?
A. (Brown) Yes.
Q. Those thousands of cases that you have investigated or hundreds was there a motive behind these fires that were intentionally set. (sic)

(Counsel for appellant): Object to the relevancy under 402, Your Honor, as to previous cases whether or not there was a motive.

THE COURT: Overruled.

*CONTINUED BY MS. MORRIS:*

Q. You may answer the question, sir.
A. Again, please?
Q. Out of those cases that you have investigated, those hundreds or thousands, was there a motive involved that was determined to be intentionally set?
A. Normally.
Q. Could you tell us, please, what some of those motives were. (sic)

(Counsel for appellant): Renew my objection under 402, Your Honor.

THE COURT: Sustained.

TEX.R.CRIM.EVID. 402 merely provides the following: "All relevant evidence is admissible, except as otherwise provided by constitution, by statute, by these rules or by other rules prescribed pursuant to statutory authority. Evidence which is not relevant is inadmissible." In his brief, appellant contends that the purpose of the State in attempting to elicit evidence concerning the existence of a motive behind the intentional fires in hundreds or thousands of other cases "could only have been for the sole purpose of having the jury believe that appellant must be guilty, because he also had a motive to set the fire."

■ In general, proof of motive is admissible as a circumstance indicating guilt. *Harris v. State,* 727 S.W.2d 537, 542 (Tex. Crim.App.1987); *Miranda v. State,* 813 S.W.2d 724, 733 (Tex.App.—San Antonio 1991, pet. ref'd). In the instant case, appellant objected only to relevancy. TEX. R.CRIM.EVID. 401 defines relevant evidence as, "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action

more probable or less probable than it would be without the evidence." Evidence of a motive for an accused's criminal acts would obviously make the existence of his guilt more probable than it would be without such evidence. Furthermore, we tend to agree with the comment made in the State's brief that the prosecutor's question really answered itself. It is difficult to conceive of any *intentionally* set fire that would not have a motive behind it. We find no substantial right of appellant affected by the admission of Brown's testimony. TEX.R.CRIM.EVID. 103(a)(1). Point of error three is overruled.

Appellant's fourth point of error centers on the following portion of the record containing the State's final argument to the jury:

(the State): Well, in the process of destroying not only the house and separate property that belonged to Mrs. Bogan there were the lives of some volunteer fire fighters and other individuals at jeopardy and risk that night, too. Folks—Volunteers who have their own jobs but give of their own time—

(Counsel for appellant): I'll object as improper plea for law enforcement, Your Honor, and inflammatory comment.

THE COURT: Sustained.

(Counsel for appellant): Ask the jury be instructed to disregard Ms. Morris' comments.

THE COURT: Jury so instructed.

(Counsel for appellant): Motion for Mistrial.

THE COURT: Motion denied.

Following an objectionable argument, an instruction by the trial court to disregard the comment will normally obviate the error, *Bell v. State,* 724 S.W.2d 780, 803 (Tex.Crim.App.1986), and cases cited therein, unless the remark is so inflammatory that its prejudicial effect cannot reasonably be removed by such an admonishment. *Kinnamon v. State,* 791 S.W.2d 84, 89 (Tex.Crim.App.1990). Moreover, for an improper argument to rise to a level mandating reversal, the argument must be "extreme or manifestly improper, or inject new and harmful facts into evidence." *McKay*

*v. State,* 707 S.W.2d 23, 36 (Tex.Crim.App. 1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986).

In the instant case, appellant's trial objection complained of an improper plea for law enforcement and inflammatory comment. On appeal, however, appellant's complaint argues that the State brought matters outside the record before the jury and injected new and prejudicial facts which were not supported by the record. When an appellant's objections at trial differ from his complaint and authorities on appeal, nothing is preserved for review. *Sterling v. State,* 800 S.W.2d 513, 521 (Tex. Crim.App.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2816, 115 L.Ed.2d 988 (1991). In a abundance of caution, we reply to appellant's argument before us by saying that the record does contain the following during the direct examination of arson expert Gerald Brown:

Q. (the State) Be it from a fire that's accidently set or intentionally set, would a fire fighter's life be at risk at any fire?

A. (Brown) At any fire you've got a danger, yes.

We find that not only does the record support the prosecutor's comment, but that the comment itself may be characterized as containing common knowledge. We find it difficult to believe that a statement to the effect that firefighters, volunteer or otherwise, risk their lives whenever they attempt to put out fires would come as a big surprise to the average American man or woman. Clearly the instruction by the trial court to disregard such a comment was sufficient to cure the harm, if any occurred. Point of error four is overruled and the judgment and sentence of the trial court is affirmed.

AFFIRMED.