**Darrell Hardy LACY, Appellant**

v.

**The STATE of Texas, Appellee.**

No. 12–93–00097–CR.

Court of Appeals of Texas,
Tyler.

March 31, 1995.

Rehearing Overruled May 10, 1995.

Debra Race and Mark Hall, for appellant.

Edward Marty, for appellee.

HOLCOMB, Justice.

A jury found Appellant guilty of aggravated assault and assessed his punishment at 20 years imprisonment and a $10,000 fine. Appellant challenges the sufficiency of the evidence to support his conviction. He also contends that the court erred when it denied his motion to quash the jury venire because it did not fairly represent the racial population of Smith County. We will affirm.

First, we will consider Appellant's second point in which he contends the evidence was insufficient to show that he committed assault "intentionally" or "knowingly." In reviewing a sufficiency of the evidence challenge, we must consider all of the evidence in the light most favorable to the verdict. *Geesa v. State*, 820 S.W.2d 154, 160 n. 8 (Tex.Cr.App.1991), *citing Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. at 319 n. 12, 99 S.Ct. at 2789 n. 12. The test set forth in *Jackson* is utilized in both circumstantial and direct evidence cases. *Geesa*, 820 S.W.2d at 161. Aggravated assault on a peace officer is committed when a person intentionally or knowingly causes bodily injury to a person whom he knows is a peace officer, while the officer is lawfully discharg-

ing an official duty. TEX.PENAL CODE ANN. § 22.02(a)(2)(A) (Vernon Supp.1992); *Williams v. State*, 833 S.W.2d 701 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd).

■ On appellate review, the sufficiency of the evidence must be measured against the jury charge. *Geesa*, 820 S.W.2d at 159. In Appellant's case, the trial court instructed the jury that, if it found:

> from the evidence beyond a reasonable doubt that ... Darrell Hardy Lacy, did then and there intentionally or knowingly cause bodily injury to Bart Lemons, by slamming the door on the hand of Bart Lemons, and the said Bart Lemons was then and there a peace officer in the lawful discharge of his official duty and the said Darrell Hardy Lacy had been informed and knew Bart Lemons was a peace officer, then you will find [Darrell Hardy Lacy] guilty of aggravated assault on a peace officer.

The jury was also charged that "a person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause a result," and that "a person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause a result."

At trial, Tyler Police Officer Bart Lemons testified that he was on duty as a patrol officer on August 11, 1992. After learning that there was an outstanding warrant for Appellant, Lemons, working alone without a partner, and driving a marked patrol car with a light-bar on top, observed Appellant in a vehicle. Lemons activated the patrol car's overhead lights and followed Appellant into a parking lot. After Lemons questioned Appellant, Appellant admitted he knew that there were warrants out for his arrest. However, when Lemons attempted to handcuff Appellant, he broke free from Lemons and ran toward a duplex.

Lemons chased Appellant and grabbed him by the shirt at the front door of the duplex. With his right hand holding on to Appellant's shirt, Lemons' body became wedged between the wall of the duplex and a storm door. With his right hand trapped between the storm door and the wooden door, Lemons maintained his hold on Appellant's shirt. Appellant then proceeded to slam the door on Lemons' hand four times. The first time Appellant slammed the door on Lemons' hand, the door hit the back of Lemons' wrist. Appellant slammed the door a second time on Lemons' hand, which resulted in a blow to Lemons' wrist bone. The third time Appellant slammed the door on Lemons, the door hit Lemons' knuckles and Appellant's shirt tore. Appellant slammed the door one last time, hitting Lemons' fingers. With the fourth blow to the officer's hand, the door finally closed and Appellant immediately locked it.

Lemons tried to open the door but was unable to because it had been locked from the inside. Not knowing if anyone other than Appellant was inside the residence, Lemons radioed for back-up assistance. Before other officers could arrive at the scene, Appellant came out of the duplex without a shirt. Lemons drew his gun and ordered Appellant to lay on the ground. Appellant yelled at Lemons and then complied with Lemons' instructions. Lemons then attempted to handcuff Appellant, but was unable to because of the injuries to his hand. As a result of the injuries, Lemons was placed on "light duty" for several days. None of the bones in his hand were broken, but he was scratched and cut, and his fingers were stiff and swollen. Photographs of Lemons' hand and arm were admitted into evidence at trial.

Appellant argues that the only evidence of the cause of Lemons' injuries came from the officer himself, and that Lemons' testimony was not plausible. Appellant contends it is conceivable that he slammed the door on Lemons' hand once, but not three times. Appellant claims further it is unbelievable that the officer did not let go of Appellant's shirt the first time the door was slammed on his hand. Appellant questions the credibility of Lemons' testimony by asking why Lemons didn't enter the duplex or, put his foot in the door instead of letting Appellant slam the door on his hand four times. Appellant proposes that a "more likely" version of the story would be that Appellant shut the door only once on Lemons' hand, and that Appel-

lant slammed the door recklessly rather than intentionally. We do not agree.

On appellate review, we are not to sit as a thirteenth juror and substitute our judgment for that of the jury. The jury is in the best position to assess the credibility of each witness and to observe the demeanor and the attitude of each witness. *Sharp v. State,* 707 S.W.2d 611 (Tex.Cr.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); *Bogan v. State,* 837 S.W.2d 422 (Tex.App.—Beaumont 1992, no pet.). They are entitled to reject one version of the facts and accept another. *Johnson v. State,* 673 S.W.2d 190, 196 (Tex.Cr.App.1984); *Alvarado v. State,* 822 S.W.2d 236 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). At trial, Appellant called no witnesses to testify on his behalf or in support of his explanation of the incident. To the contrary, Lemons' testimony was partially supported by that of Vanda Watson, an eye-witness, who testified that she observed the struggle at Appellant's door for several minutes. The jury in this case apparently believed Officer Lemons and Watson, whose testimony established the elements of the crime. Considering all of the evidence, and viewing it in the light most favorable to the verdict, we believe that a rational trier of fact could have found all the elements of the offense of aggravated assault beyond a reasonable doubt. Appellant's second point of error is overruled.

In his remaining point, Appellant claims that the trial court denied his Sixth Amendment rights under the UNITED STATES CONSTITUTION when it denied his "Motion to Quash the Jury Panel/Venire." He argues that the panel did not represent a fair cross-section of the community. The Sixth Amendment reads, in part, as follows:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed....

U.S. CONST. amend. VI. Appellant cites *Holland v. Illinois,* 493 U.S. 474, 480, 110 S.Ct. 803, 807, 107 L.Ed.2d 905 (1990), and argues that the United States Supreme Court has held that the Sixth Amendment requires that the panel or venire from which a jury is to be selected be representative of a fair cross-section of the community. *Id.,* 493 U.S. at 480, 110 S.Ct. at 807. In *Holland,* the Supreme Court stated: "The fair cross-section venire requirement is obviously not explicit in this text, but is derived from the traditional understanding of how an 'impartial jury' is assembled. The traditional understanding includes a representative venire, so that the jury will be, as we have said, drawn from a fair cross section of the community." *Id.,* 493 U.S. at 480, 110 S.Ct. at 807.

Appellant also points us to the three-prong test enunciated by the Supreme Court in *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979). In *Duren,* the Court held that to establish a *prima facie* violation of the fair cross-section requirement, the defendant must show:

(1) that the group alleged to be excluded is a distinctive group in the community;

(2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and

(3) that this under-representation is due to systematic exclusion of the group in the jury selection process.

*Id.,* 439 U.S. at 364, 99 S.Ct. at 668. The Sixth Amendment requirement of a fair cross-section of the community on a venire panel is a means of assuring, *not a representative jury, but an impartial jury. Holland,* 493 U.S. at 480, 110 S.Ct. at 807.

The record reflects that three African–Americans were in a venire of forty-eight (48) people. Appellant argues that a venire with only 6% African–Americans on the panel does not represent a fair cross-section of the community in Smith County. The exact percentage of black residents in Smith County was never stated in the record. Appellant's "Motion to Quash the Jury Panel" was based on allegations of unfair racial makeup of the panel. In arguing his motion to the court prior to jury selection, Appellant alleged that the lack of appropriate representation of African–Americans was due to the express exclusion of African–Americans from jury panels in Smith County. Appellant contends

that it is irrelevant that the venire was selected by computer from a central jury panel pool. Appellant reasons that because 6% falls well below the racial makeup of the population of Smith County, the trial court, as well as this Court, should take judicial notice that the African–American population in Smith County is closer to 25%. The trial judge took judicial notice that the venire was randomly drawn from the *Central Jury Panel* by computer, and denied Appellant's motion.

For the purpose of this opinion, we will assume Appellant's claim is substantially correct. The Sixth Amendment requirement of a fair cross-section of the community on a venire panel is a means of assuring, not a racially representative jury *(which the Constitution does not demand)*, but an impartial jury *(which the Constitution does demand)*. *Holland*, 493 U.S. at 480, 110 S.Ct. at 807. In other words, there is "no requirement that the petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population" where the defendant lives. *Id.* at 483, 110 S.Ct. at 808; citing *Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S.Ct. 692, 701–02, 42 L.Ed.2d 690 (1975); *Seubert v. State*, 787 S.W.2d 68, 70 (Tex.Cr. App.1990).

 Under the Sixth Amendment, a defendant is entitled to object to a venire produced by a system that does not, by design, *generate* venire panels representative of a fair cross-section of the community. In this regard, Article I, section 10 of the TEXAS CONSTITUTION provides the same protection. *Marquez v. State*, 725 S.W.2d 217, 243 (Tex. Cr.App.1987), *cert. denied*, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987). However, we cannot necessarily conclude that a disproportionate number of African–Americans on a single panel demonstrates a systematic exclusion of African–Americans in violation of Appellant's Sixth Amendment rights. *May v. State*, 738 S.W.2d 261, 269 (Tex.Cr.App. 1987), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 158 (1987). Proportionate representation of races on jury panels is not constitutionally required, although the selection of the panel must be done without discrimination as to race. *May*, 738 S.W.2d at 269.

 Appellant has failed to show that under-representation of African–Americans on venire panels in Smith County is due to a *systematic* exclusion in the jury selection process, or that it was the result of any State action or opportunity demonstrating systematic exclusion. The only evidence presented having any relevance to the manner in which the venire was composed was when the court stated that the panel had been randomly selected from the central jury pool. In order to have succeeded with this point of error, it was incumbent upon Appellant to show some manner whereby African–Americans were not included in the computer base from which the panel was selected.

 In addition, Appellant failed to support the allegations in his motion to quash the venire with an affidavit. A proper challenge must be in writing, distinctly setting forth the grounds for the challenge, *and must be supported by an affidavit of the appellant or other credible person.* TEX. CODE CRIM.PROC.ANN. art. 35.07 (Vernon 1989); *Hart v. State*, 818 S.W.2d 430 (Tex. App.—Corpus Christi 1991, no pet.). Although Appellant filed his motion in writing, he did not move for a continuance so that he could prepare an affidavit, nor did he present evidence from any other person in support of his motion. *Esquivel v. State*, 595 S.W.2d 516 (Tex.Cr.App.1980). If there is no affidavit, nothing is preserved for appellate review. *Stephenson v. State*, 494 S.W.2d 900, 905 (Tex.Cr.App.1973); *Brokenberry v. State*, 853 S.W.2d 145, 149 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd). Thus, a proper challenge to the array was not presented to the trial court. Point of error one is overruled.

The judgment of the trial court is **affirmed.**