COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-170-CR
 
FLORENCE BERNICE STRAWN       
           
           
           
           
    APPELLANT
V.
THE STATE OF TEXAS                                                                      
STATE
------------
FROM THE 30
TH DISTRICT COURT OF WICHITA
COUNTY
------------
OPINION
------------
Appellant Florence Bernice Strawn appeals
from her conviction for murder. In two issues, appellant contends the trial
court erred in overruling her objection to the jury pool selection method used
by Wichita County and in sustaining the State's objection to the testimony of
her expert witness at punishment. We affirm.
In her first issue, appellant argues that
the trial court erred in overruling her objection to the jury pool selection
method used by Wichita County. Specifically, appellant contends that Wichita
County systematically excludes African Americans from the jury pool in violation
of the Sixth Amendment to the United States Constitution. U.S. Const. amend. VI.
At the hearing on appellant's challenge to
the jury venire, appellant introduced evidence showing that African Americans
represent 10.2 percent of the total population in Wichita County. The venire
panel selected for appellant's trial, however, included only one African
American out of forty-eight potential jurors, representing approximately two
percent of the panel. Appellant also introduced evidence showing that out of
twenty-five venire panels selected between January 8, 2001 and January 7, 2002,
3,082 potential jurors were called. Of those persons called for jury duty who
responded to the summons and whose race could be determined, 132 potential
jurors were African American, or approximately 4.7 percent.
(1) Appellant also presented expert testimony by Dr. Joel Schmitter, a
mathematician and statistician, that in fifteen out of the twenty-five venire
panels, African Americans were underrepresented. Dr. Schmitter conceded,
however, that he made his calculations without taking into account the number of
African Americans who were actually eligible for jury service; his calculations
were based on all 10.2 percent of the Wichita County African American population
being eligible to vote.
The State introduced evidence showing that
jury panels are chosen randomly from a list of registered voters, licensed
drivers, and persons with state identification cards. The race of the persons on
the list is not indicated, nor is it requested on voter registration
applications. There was no evidence that Wichita County intentionally prevented
African Americans from registering to vote or that it removed them from juror
lists. Sharon Kaufhold, an employee of the Wichita County Clerk's Office, also
testified that she was unaware of any legal barriers that prevented African
Americans from registering to vote or of the county removing African Americans
from jury pools.
In order to establish a prima facie
violation of the requirement that there be a fair cross section of the community
represented on the jury panel, appellant must show: (1) that the group alleged
to be excluded is a "distinctive" group in the community; (2) that the
representation of this group in venires from which juries are selected is not
fair and reasonable in relation to the number of such persons in the community;
and (3) that this underrepresentation is due to systematic exclusion of the
group in the jury selection process. Duren v. Missouri, 439 U.S. 357,
364, 99 S. Ct. 664, 668 (1979); Pondexter v. State, 942 S.W.2d 577, 580
(Tex. Crim. App. 1996) cert. denied, 522 U.S. 825 (1997). Proportionate
representation of races on jury panels is not constitutionally required, but the
selection of the panel must be done without discrimination as to race. May
v. State, 738 S.W.2d 261, 269 (Tex. Crim. App.), cert. denied, 484
U.S. 872 (1987).
The State does not dispute that African
Americans are part of a distinct group. At issue is whether appellant
demonstrated that representation of African Americans in venires from which
juries are selected is not fair and reasonable in relation to the number of such
persons in Wichita County and whether this underrepresentation, if any, is due
to systematic exclusion of African Americans in the jury selection process.
While the evidence presented by appellant showing that African Americans
composed approximately 4.7 percent of venire members whose race was known may
raise an inference of unfairness or unreasonableness, appellant failed to show
"that the number of African-Americans who qualified for the selection
process (registered voters, and those with driver's licenses or identification
cards) were of the same or similar percentages as the population of the
county." Pondexter, 942 S.W.2d at 581. (2)
Moreover, there is no evidence that Wichita County employed measures to keep
African Americans from being selected for jury duty. See Lacy v. State,
899 S.W.2d 284, 288 (Tex. App.--Tyler 1995, no pet.) ("[I]t was incumbent
upon Appellant to show some manner whereby African-Americans were not included
in the computer base from which the panel was selected."). Thus, we hold
the trial court did not err in denying appellant's challenge to the jury venire.
We overrule appellant's first issue.
In appellant's second issue, she contends
the trial court erred in sustaining the State's objection to her expert's
testimony due to appellant's failure to comply with article 39.14(b) of the code
of criminal procedure. Tex. Code Crim. Proc. Ann. art. 39.14(b) (Vernon Supp.
2003). Article 39.14(b) states:

 On motion of a party and on notice to
 the other parties, the court in which an action is pending may order one or
 more of the other parties to disclose to the party making the motion the name
 and address of each person the other party may use at trial to present
 evidence under Rules 702, 703, and 705, Texas Rules of Evidence. The court
 shall specify in the order the time and manner in which the other party must
 make the disclosure to the moving party, but in specifying the time in which
 the other party shall make disclosure the court shall require the other party
 to make the disclosure not later than the 20th day before the date the trial
 begins.

Id.
Before trial, the State filed a motion to
compel the designation of any expert that appellant might call at trial. The
trial court granted the motion. During the punishment phase of trial, appellant
sought to introduce expert testimony from Dr. Leon Morris. The State objected to
this proposed testimony because appellant did not disclose Dr. Morris as an
expert witness who would testify at trial. The trial court granted the State's
motion and excluded the testimony of Dr. Morris.
No Texas court has published an opinion
applying article 39.14(b) to a defendant's failure to timely disclose the
identity of testifying experts pursuant to a pretrial discovery order. Article
39.14(b) also does not specify what sanctions are required or permitted should a
party fail to comply with a trial court's discovery order. Thus, we will look to
cases discussing sanctions permitted to remedy the State's failure to timely
disclose expert witnesses for guidance.
Courts have held that evidence wilfully
withheld from disclosure under a discovery order should be excluded from
evidence. Hollowell v. State, 571 S.W.2d 179, 180 (Tex. Crim. App.
1978); Osbourn v. State, 59 S.W.3d 809, 816 (Tex. App.--Austin 2001), aff'd
on other grounds, 92 S.W.3d 531 (Tex. Crim. App. 2002). The extreme
sanction of exclusion, however, should not be imposed absent wilfulness on the
part of the party failing to timely disclose the evidence. Osbourn, 59
S.W.3d at 816; Peña v. State, 864 S.W.2d 147, 149 (Tex. App.--Waco
1993, no pet.) (op. on reh'g). Appellate courts review a trial court's decision
to permit or deny testimony from a witness not disclosed before trial for an
abuse of discretion. Stoker v. State, 788 S.W.2d 1, 15 (Tex. Crim. App.
1989); Osbourn, 59 S.W.3d at 816. Such an appellate review usually
encompasses two factors: (1) whether the party's action in failing to timely
disclose the expert witness constituted bad faith; and (2) whether the opposing
party (i.e., the State in this case) could have reasonably anticipated that the
undisclosed witness would testify. Nobles v. State, 843 S.W.2d 503,
514-15 (Tex. Crim. App. 1992); Osbourn, 59 S.W.3d at 816.
There is no evidence in the record
demonstrating that appellant's failure to timely disclose Dr. Morris as a
testifying expert was conducted in bad faith. The State contends that evidence
of bad faith exists because appellant's trial counsel sought to persuade the
trial court to hold him in contempt as opposed to excluding the expert
testimony; the State believes that counsel's request shows he acted
deliberately. Counsel's request, however, could just as likely indicate that he
did not want appellant to suffer for his shortcoming or mistake in failing to
adhere to the trial court's discovery order. We do not believe such a request
shows bad faith on appellant's part in failing to timely disclose her expert
witness.
The State also admits in its brief that it
was aware that an expert had conducted a psychological examination of appellant.
(3) There is no other evidence, however, that appellant ever indicated
to the State that she intended to use Dr. Morris as an expert. There is also no
evidence showing how the State learned of the psychological examination. See
Hayden v. State, 66 S.W.3d 269, 272-73 (Tex. Crim. App. 2001) (holding
defendant had notice that State would introduce extraneous offense evidence
where State delivered to defendant the witness statements before
trial). Thus, we agree with the State that knowledge of a doctor conducting a
psychological examination of the defendant at the defendant's request is not
enough to put the State on notice that the defendant intends to call that doctor
to testify as an expert, especially in light of the fact that a specific order
was in place requiring pretrial disclosure of experts. Cf. Osbourn, 59
S.W.3d at 816 (stating defendant had notice that State may use police officer as
expert because he was arresting officer who completed offense report that was
available to defendant and because he was an "essential witness under
any circumstances" (emphasis added)).
Appellant also contends that she sought to
introduce Dr. Morris's testimony as rebuttal evidence and could not have
anticipated the need for his testimony until she learned "what theory the
State would suggest to the jury." Cf., e.g., Hoagland v. State,
494 S.W.2d 186, 189 (Tex. Crim. App. 1973) (noting that the State cannot intend
to introduce true rebuttal evidence before trial because the State does not know
what theories the defendant will advance); Doyle v. State, 875 S.W.2d
21, 22 (Tex. App.--Tyler 1994, no pet.) (holding it is not reasonable for the
State to anticipate needing undisclosed witness to rebut defense testimony that
it could not foresee). At trial on punishment, appellant argued that Dr. Morris
would rebut evidence presented by the State from which the jury might have drawn
the inference that appellant had the intent to kill. By the time appellant
sought to admit this rebuttal testimony at punishment, however, the jury had
already decided the issue of intent and had already convicted appellant of
murder. Furthermore, appellant has not shown on appeal that Dr. Morris's
testimony was needed to rebut evidence presented by the State at punishment.
Thus, even if Dr. Morris's testimony was properly admissible as rebuttal
evidence, no harm occurred by the trial court's exclusion of Dr. Morris's
testimony because appellant has not shown us that his testimony would have been
"helpful to the jury in determining the appropriate sentence in a
particular case." Mendiola v. State, 21 S.W.3d 282, 285 (Tex.
Crim. App. 2000) (quoting Rogers v. State, 991 S.W.2d 263, 265 (Tex.
Crim. App. 1999)); see also Tex. R. App. P. 38.1(h). Under the specific
facts of this case, we do not think a defendant should be permitted to avoid the
requirements of an order entered pursuant to article 39.14(b) by stating that
the expert is a rebuttal witness without demonstrating in some manner that the
witness's testimony was relevant to issues at sentencing. Accordingly, we hold
the trial court did not err in granting the State's objection to Dr. Morris's
testimony. We overrule appellant's second issue.
We affirm the trial court's judgment.
 
                                                      
   PER CURIAM
PANEL F: DAY, HOLMAN, and GARDNER, JJ.
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
DELIVERED: May 29, 2003

1. Appellant's attorney attempted to contact several
people called for jury duty during this time who initially did not indicate
their race. Of the 3,082 potential jurors called for service during 2001-2002,
the race of 294 jurors remains unknown. Thus, based on the 2,788 jurors whose
race is known (3,082 - 294 = 2,788), approximately 4.7 percent of them were
African American (132 / 2,788 = .047).
2. Although appellant contends that it would have been
impossible to make such a showing because the race of eligible voters is not
requested by the State when voters register, we are bound by the dictates of the
Texas Court of Criminal Appeals. See Flores v. State, 883 S.W.2d 383,
385 (Tex. App.--Amarillo 1994, pet. ref'd).
3. At the hearing on the State's motion, the State also
did not dispute appellant's trial counsel's assertions that the State had
"actual knowledge that an expert had done a psychological examination of
the Defendant. . . . So it's hard to imagine that there's any harm to the State
since they were aware of the existence of this expert."