IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00093-CR

 

Winston Othell Chapman,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 54th District Court

McLennan County, Texas

Trial Court No. 2004-1164-C

 



MEMORANDUM  Opinion



 

      A McLennan County Grand Jury charged Winston
Othell Chapman by indictment with aggravated robbery.  A jury returned a guilty
verdict, and Chapman was sentenced to ten years in prison.  He brings three
issues on appeal.  We will affirm.

Background

The Cruz’s Jewelry Store, a family
business operated by Vicenta Cruz, was robbed by three men on August 6, 2004 at
approximately 4:00 p.m.  Vicenta and her daughter, Jessica, were working in the
store at the time of the robbery.  Jessica testified that she saw Michael
Walker, a friend from school, and two other men walk from an alley towards the
store.  It appeared that they were going to enter the store but “veered off”
after Walker saw Jessica.  Walker entered the store, his face covered in a
black rag, approximately five minutes later with the two other men.  He held a
gun to Jessica’s head and told her to get down while another man, later
identified as Chapman, held a gun to Vicenta’s head and demanded money and
jewelry.  The third man kept watch at the door.

Following the robbery, Jessica called
9-1-1 and assisted the police in locating Walker.  Jessica described the man
who held her mother at gunpoint as having “a large afro and wearing a tan
shirt.”  Based on this description and information provided by Walker following his arrest, Detective John Rozyskie of the Waco Police Department arranged
a photo array, which included Chapman.  Jessica was not able to pick him out of
the array, but Vicenta made a positive identification.

Factual Sufficiency

Chapman’s first issue alleges that the
evidence was factually insufficient to support the conviction.  In a factual
sufficiency review, we ask whether a neutral review of all the evidence, though
legally sufficient, demonstrates either that the proof of guilt is so weak or
that conflicting evidence is so strong as to render the factfinder's verdict
clearly wrong and manifestly unjust.  Watson v. State, 204 S.W.3d. 404,
414-15 (Tex. Crim. App. 2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  “The court reviews the evidence weighed by the jury that tends to
prove the existence of the elemental fact in dispute and compares it with the
evidence that tends to disprove that fact.”  Johnson, 23 S.W.3d at 7
(quoting Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996)).  The
appellate court “does not indulge in inferences or confine its view to evidence
favoring one side of the case.  Rather, it looks at all the evidence on both
sides and then makes a predominantly intuitive judgment....”  Id.  (quoting William Powers and Jack Ratliff, Another
Look at ANo Evidence@ and
AInsufficient Evidence,@  69
Texas L. Rev. 515, 519 (1991)).  
     The nature of a factual
sufficiency review authorizes an appellate court, although to a very limited
degree, to act as the so-called “thirteenth juror” to review the factfinder's
weighing of the evidence and disagree with the factfinder's determination.  Watson,
204 S.W.3d at 416-17 (citing Tibbs v. Florida, 457 U.S. 31, 42-3, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982), and Meraz v. State, 785 S.W.2d
146, 156 (Tex. Crim. App.1990)).

Chapman contends the evidence is
factually insufficient because Vicenta’s description of the robber was not
consistent with Chapman’s appearance, and because he presented evidence that he
was not near the store at the time of the robbery.

Chapman presented evidence that he did
not have long hair during the time period at issue.  He introduced a May 2004
graduation photo and the photo taken on the day of his arrest in September
2004, both showing him with short hair.  However, his aunt, Johnetta Chapman,
testified that after graduation his hair grew out about an inch.  Rozyskie
testified that Vicenta picked Chapman out of the photo array without
hesitation.  She stated that she had no doubt, although Chapman’s hair was
short in the picture and she remembered his hair being longer, that he was the
man who held her at gunpoint.  She testified that she stood opposite Chapman
during the robbery and she will never forget his face.

Several defense witnesses testified as
to Chapman’s whereabouts during the time of the robbery.  Quinton Davis
testified that he and Chapman spent the night at Albert Toliver, Jr.’s home the
night before the robbery.  Davis left Toliver’s house around noon the next day
and saw Chapman in a four-door car at 4:00 p.m.  Toliver stated that only
Chapman spent the night at his house the night before the robbery and that he
took Chapman to Johnetta’s house at 3:15 the following day to meet his
girlfriend.  He met up with Chapman again that night at a nightclub.  Albert
Toliver, Sr. testified that, although he doesn’t remember specifically what day
the robbery occurred, he believed that his son and Chapman were at his house
until 4:00 or 4:30 on the day of the robbery.  

Eugenia Mitchell-Chapman, Chapman’s
wife, testified that he was with her at the time of the robbery.  She spent the
morning of the robbery searching for a car to purchase and applying for a car
loan.  She had been to Members Choice Credit Union twice when she called
Chapman before 3:00 from the credit union.  She left before seeing the loan
officer, Mike Glockzin, to go pick up Chapman.  They returned to the credit
union and waited 45 minutes to an hour to meet with Glockzin.  After leaving
the credit union, they drove to her mother’s house, to a restaurant to get
something to eat, and then to her house.  Eugenia testified that Davis was mistaken that he saw Chapman again that afternoon because they did not leave the
bank until 5:00 and because the car they were driving was a two-door, not a
four-door as Davis testified.  She also stated that Chapman did not go to a
club with Toliver the night of the robbery because she and Chapman stayed at
her house for “a while” then went to Johnetta’s house.  She testified that they
stayed there until 2:00 or 3:00 the following morning.

Glockzin testified that although he
has a record of multiple meetings with Eugenia on the day of the robbery and he
remembers a male accompanying her for one of these visits, he cannot remember
at what time the male was with her or what he looked like.  However, based
solely on memory, he believed the man was Hispanic.

The jury is the “sole judge of the
weight and credibility of witness testimony” and “may choose to believe all,
some, or none of it.”  Santellan v. State, 939 S.W.2d 155, 164 (Tex.
Crim. App. 1997).  The jury is also in the “best position” to observe the
demeanor, attitude, “expressions, gestures, and tone” of the witnesses.  Lacy
v. State, 899 S.W.2d 284, 287 (Tex. App.—Tyler 1995, no writ); Reed v.
State, 991 S.W.2d 354, 360 (Tex. App.—Corpus Christi 1999, pet. ref'd). 
Having heard the testimony of the witnesses and observed their demeanors, the
jury was free to decide who and what to believe.  See Santellan, 939
S.W.2d at 164.  The jury in this case apparently believed Vicenta and Jessica.

Considering all the evidence in a
neutral light, we find that the jury was justified in finding Chapman guilty.  Watson,
204 S.W.3d at 415.  We do not find the evidence so weak nor the conflicting
evidence so strong as to render the verdict manifestly unjust.  Because the
evidence is factually sufficient to support Chapman’s conviction for aggravated
robbery, we overrule his first issue.

Co-Defendant Statement

In his second issue, Chapman argues
that the trial court abused its discretion in excluding Toliver’s testimony of
statements made by Walker, Chapman’s co-defendant.  Toliver testified as
follows:

DEFENSE COUNSEL:   Did you ever learn or did you
ever have a conversation with Michael Walker about the robbery? 

 

TOLIVER:                       Yes, sir.

 

DEFENSE COUNSEL:   Did you find out whether or not
he did it?

 

TOLIVER:                       Yes, sir.

 

DEFENSE COUNSEL:   Did he ever tell you who he did
it with?

 

TOLIVER:                       Yes, sir.

 

The trial court sustained the State’s hearsay
objection.  Defense counsel then indicated his intention to make a bill of
exception.

      To preserve an issue for appeal premised on
the trial court's exclusion of evidence, a party must make an offer of proof,
unless the substance of the evidence was apparent from the context within which
questions were asked.  Tex. R. Evid.
103(a)(2).  Further, the offering party shall, as soon as practicable, but
before the court's charge is read to the jury, be allowed to make, in the
absence of the jury, its offer of proof.  Tex.
R. Evid. 103(b).  Chapman waited until after the jury had decided guilt
and punishment before making his bill of exception.

      On appeal, Chapman now argues that the
statement was admissible as a statement against interest.  See Tex. R. Evid. 803(24).  However, he
never argued to the trial court that this exception to the hearsay rule applied. 
The party must, at the earliest opportunity, have done everything necessary to
bring to the judge's attention the evidence rule in question and its precise
and proper application to the evidence in question.  Reyna v. State, 168
S.W.3d 173, 177 (Tex. Crim. App. 2005).  Therefore, it was Chapman’s
responsibility to specify which exception to the hearsay rule he was relying
upon.  See Willover v. State, 70 S.W.3d 841, 845 (Tex. Crim. App.
2002).  Finding that Chapman failed to file a timely bill of exception and has
failed to specify which rule of evidence which he relied on, we hold that
Chapman failed to preserve this issue for review.  We overrule his second
issue.

Identification Evidence 

      At trial, Glockzin testified that he
believed, “going off pure memory,” that the person who accompanied Eugenia to
his office was an Hispanic male.  In his third issue, Chapman complains that he
was denied the opportunity to present evidence that Glockzin told his
investigator, Don Youngblood, that the man with Eugenia was black.  The trial
court sustained the State’s objection to this testimony on two grounds:  (1)
the testimony was not proper impeachment because Glockzin had not been
confronted with the statement he made to Youngblood; and (2) Youngblood
violated Rule of Evidence 614 by remaining in the courtroom throughout the
trial.

      Chapman concedes that the testimony was not
admissible as impeachment evidence, but argues that it should have been
admitted because it amounted to evidence of identification.  A statement is not
hearsay if the declarant testifies at the trial and is subject to
cross-examination concerning the statement, and the statement is one of
identification of a person made after perceiving the person.  Tex. R. Evid. 801(e)(1)(C).  Glockzin,
testified at trial as to what little he remembered about the identity of the
man with Eugenia.  Having failed to establish the proper predicate to impeach
Glockzin, Chapman attempts to characterize this testimony as evidence of
identification.  We are not persuaded.  We hold that the trial court did not
err in excluding Youngblood’s testimony because he was not the declarant.  See
id.  Accordingly, we overrule Chapman’s third issue.

Conclusion

      Having overruled Chapman’s three issues, we
affirm the judgment of the trial court.

 

 

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Affirmed

Opinion
delivered and filed April 25, 2007

Do
not publish

[CR25]