IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00026-CR

 

David Wayne Glockzin,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 54th District Court

McLennan County, Texas

Trial Court No. 2004-760-C

 



Opinion



 








          David Wayne Glockzin was convicted of
aggravated sexual assault (count I) and indecency with a child (count II).  The
jury sentenced Glockzin to sixty years in prison with a $5,000 fine on count I
and twenty years in prison with a $5,000 fine on count II.  Glockzin argues
that: (1) the evidence is factually insufficient; (2) the court’s charge
“constructively amended” the indictment; (3) “sexual contact” was improperly
defined in the charge; (4) the court erred by not sua sponte including an
extraneous offense instruction in the guilt-innocence charge; (5) the court’s
charge commented on the weight of the evidence as to count I; (6)  the court’s
charge commented on the weight of the evidence as to count II; (7) the court
erred by not sua sponte including an extraneous offense instruction in
the punishment charge; and (8) trial counsel rendered ineffective assistance. 
We affirm.

FACTUAL BACKGROUND

Glockzin is J.M.’s father.[1]  J.M. and her niece, H.M., stayed with Glockzin on
the night of the offense.  That night, Glockzin followed J.M. to the apartment’s
only bedroom, got in bed with her, pulled down her shorts and underwear, and rubbed
and penetrated her vaginal area with his finger.[2] 
Glockzin also pulled down his pants, pulled up her shirt, “scooted up,” forced
her chest against his penis, and rubbed.[3] 
Glockzin then left the bedroom.  J.M. testified that H.M. was in the living
room during this time.  She told Detective Lonnie Underberg that H.M. was in
the bedroom, but ran out when Glockzin entered and returned after he left. 
J.M. testified that Glockzin was drinking; she smelled alcohol and his eyes
were red.  She concealed these events until, several days later, her sister, R.M.,
discovered J.M.’s bloody underwear hidden in the closet.  She and M.G., J.M.’s
mother, confronted J.M. who revealed the offense.

FACTUAL SUFFICIENCY

          In his first issue, Glockzin
challenges the factual sufficiency of the evidence to support his aggravated
sexual assault conviction.

Under factual sufficiency
review, we ask whether a neutral review of all the evidence, though
legally sufficient, demonstrates either that the proof of guilt is so weak
or that conflicting evidence is so strong as to render the jury’s verdict
clearly wrong and manifestly unjust.  Watson
v. State, 204 S.W.3d 404, 415 (Tex. Crim. App. 2006);
Johnson
v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000).  “The court reviews the
evidence weighed by the jury that tends to prove the existence of the elemental
fact in dispute and compares it with the evidence that tends to disprove that
fact.”  Johnson, 23 S.W.3d at 7
(quoting Jones
v. State, 944
S.W.2d 642, 647 (Tex. Crim. App. 1996)).  The appellate court “does
not indulge in inferences or confine its view to evidence favoring one side of
the case.  Rather, it looks at all the evidence on both sides and then makes a
predominantly intuitive judgment. . . .”  Id. (quoting William Powers
and Jack Ratliff, Another Look at “No Evidence” and “Insufficient Evidence,”
 69 Tex. L.
Rev. 515, 519 (1991)).

An appellate court, although to
a very limited degree, may act as the so-called “thirteenth juror” to
review the fact finder’s weighing of the evidence and disagree with the fact
finder’s determination.  Watson, 204 S.W.3d at 417 (citing Tibbs
v. Florida, 457
U.S. 31, 42-3, 102 S. Ct. 2211, 2218, 72 L. Ed. 2d 652 (1982), Meraz
v. State, 785
S.W.2d 146, 156 (Tex. Crim. App. 1990)).  If an appellate court concludes
that the evidence is factually insufficient, it must clearly state why it has
reached that conclusion.  Johnson, 23 S.W.3d at 7
(citing Pool v.
Ford Motor Co.,
715 S.W.2d 629, 635 (Tex. 1986)).

Per the law in effect at the
time of the offense, a person commits aggravated sexual assault where he: (1)
intentionally or knowingly; (2) causes penetration of the female sexual organ;
(3) by any means; (4) of a child younger than fourteen years of age; and (5)
the child is not the person’s spouse.  See Act of May 28, 2003, 78th
Leg., R.S., ch. 896, § 1, 2003 Tex. Gen. Laws 896, 2722, (amended 2005) (current
version at Tex.
Pen. Code Ann. § 22.021 (Vernon Supp. 2006)); see also Tex. Pen. Code Ann. § 22.011 (Vernon Supp. 2006).  

Analysis

First, Glockzin complains that evidence of J.M.’s genital warts
suggests that he is an “invisible carrier” and infected J.M. through
“genital-to-genital contact.”  Several
days after the offense, Dr. Ann Sims of the Child Advocacy Center diagnosed J.M. with genital warts.  The warts bled and hurt if touched.  Sims could not determine how long J.M. had the
warts, “but in all probability, it had been more than two weeks since she had
come into contact with whatever caused the wart.”  She believes that “an
eruption of warts” like J.M.’s would most likely result from
“genital-to-genital contact” by which warts are commonly transmitted, as
opposed to digital penetration.  Sims also stated that “it is not impossible
that a finger -- either a finger that had come in contact with a wart just
before it touched her or a finger that had a wart on it or something like that”
may have infected J.M.

The
record contains no evidence of genital warts among the individuals with whom
J.M. has had contact.  Glockzin denied having warts or being treated for
warts.  M.G. did not have warts.  R.M., M.G., and J.M.’s Aunt, A.M., did not
know anyone with warts.  Underberg obtained medical releases from Glockzin, M.G.,
and M.G.’s boyfriend, but found no evidence of treatment for warts.  Glockzin
agreed to a visual inspection by Underberg, which revealed no warts.  Even so,
Sims testified that a person may be either visibly or microscopically infected
and a physical exam is the usual method of diagnosis.

In response, Glockzin argues
that: (1) though he has no visible warts, testing is available for detecting
the human papilloma virus that causes the warts; (2) had he been tested, the
issue would be resolved as to whether he infected J.M.; and (3) testimony
regarding J.M.’s infection would have been improper if he tested negative for
HPV.  He urges us to take judicial notice of a scientific article addressing
this method of testing, but which was not presented at trial.

Although the Texas Court of
Criminal Appeals has held that appellate courts may take judicial notice of
scientific literature not presented at trial, the Court recently refused to do
so:  

In his brief to this Court, the State
Prosecuting Attorney presents a plethora of cites to scientific articles and
learned treatises, as well as to some cases from other jurisdictions concerning
this general area of scientific endeavor. This is swell stuff. The trial court
should have been given this material, and appellant should have
been allowed an opportunity to cross-examine any witnesses who sponsored
it. The trial court hearing is the main event for Daubert/Kelly
gatekeeping hearings; it is not a try-out on the road to an appellate
scientific seminar.

 

…

 

It cannot now rely upon the appellate courts to
become independent scientific sleuths to ferret out the appropriate scientific
materials which could support the trial court's decision...

 

Hernandez v. State, 116 S.W.3d 26, 30-31 (Tex. Crim. App. 2003); see Emerson v. State, 880 S.W.2d 759, 764-65 (Tex.
Crim. App. 1994).  Because the
scientific literature cited in Glockzin’s brief was not presented at trial and
because we find no authority “recognizing the methodology prescribed” in this
literature, we decline to take judicial notice of this article.  Davis v. State, 147 S.W.3d 554, 555-56 (Tex. App.—Waco 2004, no pet.); see
Hernandez, 116 S.W.3d at 30.

Sims testified that while there is testing for
DNA of HPV, it is unavailable in McLennan County, it is not “very accurate;
it’s not very sensitive; and it’s not cost effective.”  Sims also testified
that not every person will contract genital warts by coming into contact with
HPV.  The record neither shows who else may have abused J.M. nor conclusively
establishes when she contracted the warts.  The fact that J.M. suffers from a
sexually transmitted disease that Glockzin purportedly lacks “does not make the
evidence supporting the judgment so weak as to be manifestly unjust and clearly
wrong.”  Thompson v. State, 85 S.W.3d 415, 420 (Tex. App—Fort Worth 2002, no
pet.) aff’d 108
S.W.3d 287 (Tex. Crim. App. 2003); see Watson, 204 S.W.3d at 415; see also Johnson, 23 S.W.3d at 11.[4]

Second, Glockzin argues that evidence of prior
abuse is contrary to proof of his guilt.  After disclosing the abuse, J.M.
consistently repeated that Glockzin assaulted her and this was the only time. 
She has repeatedly denied any previous abuse and consistently describes the
offense.  However, Sims believes that J.M. may have been abused more often than
she admits.  Sims testified that J.M. did not likely contract warts from only
one instance of abuse but may have been infected during an instance she does
not recall.  J.M. admitted that she had been experiencing pain and itching in
her vaginal area since Christmas, approximately three months before the
offense.  She becomes upset if questioned further about additional abuse.  Two
years after she first examined J.M., Sims performed a second exam, which
revealed that J.M’s warts had mostly disappeared.  This exam also revealed a
tear in J.M.’s hymen.  This tear most likely resulted from something other than
digital penetration, which does not normally cause a tear.         

Sims believes that J.M. is hiding something,
maybe to protect herself and/or her family.  R.M. feels this is not the only
instance of abuse.  M.G. and R.M. observed J.M.’s behavior change after
disclosing the abuse.  J.M. wanted to be alone and was not as playful with
other children.  J.M. no longer wanted to see Glockzin, but attended the circus
with him the week after the offense.  Another time, she turned away when she
saw Glockzin on the street and reached for M.G.’s hand.  A.M. testified that
J.M. appeared nervous.  About three years earlier, when A.M. spoke to J.M. and
another girl about abuse, J.M. became teary.  Because A.M. was crying, she
thought J.M.’s tears may have been shed in sympathy.  Even so, A.M. feels that
J.M. is hiding something.  The witnesses could not identify anyone else who may
have abused J.M.

While it is possible that J.M. was abused in the
past, whether by Glockzin or someone else, the fact remains that J.M. described
an instance of abuse by Glockzin.  “The testimony of a child victim alone is sufficient to
support a conviction for aggravated sexual assault or indecency with a child.”  Perez
v. State, 113
S.W.3d 819, 838 (Tex. App.—Austin 2003, pet. ref’d).  The jury was free to accept J.M.’s testimony over that of other
witnesses, including Glockzin, and disregard any “inconsistencies.”  Id. at 838-39.  Therefore, we cannot
say that that the possibility of prior abuse renders the evidence factually
insufficient.  See
Watson, 204 S.W.3d at 415; see also Johnson, 23 S.W.3d at 11.

Third, Glockzin argues that M.G.
may have coached J.M.  He asks us to take judicial notice of a scientific
article discussing the character traits of falsely accusing parents.  We
decline to do so.  See Davis, 147 S.W.3d at 555-56; see also Hernandez, 116 S.W.3d at 30.

The record indicates that J.M. concealed the
abuse to avoid upsetting M.G.  M.G. felt “angry” when R.M. and she questioned
J.M. about the underwear.  A.M. felt that J.M. may be trying to appease her
mother or avoid getting into trouble.  Sims felt J.M. might be trying to
“protect someone.”  Glockzin believes M.G. is the force behind J.M.’s
accusations:

No. I don’t know why she said it.  I mean, I
don’t know if she came up with it on her own or somebody told her.  I know it
didn’t happen.

 

What I believe is her mom knows who and she
doesn’t -- I think she’s protecting somebody. 

 

Yeah.  I think it’s either mom making her, or I
am the only name she can come up with so her mom wouldn’t go ballistic on her. 

 

However, the record does not indicate any motive
for fabricating allegations.  Both J.M. and M.G. had much to lose by accusing
Glockzin.  Glockzin voluntarily provided financial assistance to M.G. and
provided additional funding when asked.  Although Glockzin denies doing so, M.G.
testified that he gave her $400, significantly more than normal, around the
time of the offense.  Glockzin was generous with J.M.  He gave her various
opportunities, such as attending the circus and eating out, that she might not
otherwise be able to enjoy.  J.M. also enjoyed spending time with Glockzin’s
parents and was sad not to be able to see them anymore.  R.M. and A.M.
testified that Glockzin and J.M. got along and the relationship seemed normal. 
Glockzin said he had a good relationship with J.M.  M.G. testified that
Glockzin and she got along.  There appears to be no animosity within the
various relationships involved.  Finally, J.M. identified Glockzin only after R.M.
named other men with whom J.M. had contact.

The jury is the “sole judge of the weight and
credibility of witness testimony” and “may choose to believe all, some, or none
of it.”  Santellan
v. State, 939
S.W.2d 155, 164 (Tex. Crim. App. 1997); Perez, 113 S.W.3d at 838.  The jury is also in the “best position” to observe the demeanor, attitude,
“expressions, gestures, and tone” of the witnesses.  Lacy v. State, 899 S.W.2d 284, 287 (Tex.
App.—Tyler 1995, no writ); Reed v. State, 991 S.W.2d 354, 360 (Tex.
App.—Corpus Christi 1999, pet. ref’d).  Having heard J.M., M.G., and Glockzin’s
testimony and observed their demeanors, the jury was free to decide who and
what to believe.  See Santellan, 939 S.W.2d at 164; see also
Perez, 113 S.W.3d at 838; Lacy, 899 S.W.2d at 287; Reed,
991 S.W.2d at 360.  The jury was in the best position to evaluate whether the
allegations against Glockzin were truthful or fabricated.  See Lacy,
899 S.W.2d at 287.     

Fourth, Glockzin denied abusing J.M. or drinking on the night
of the offense.  According to Glockzin, on that night, J.M. and H.M. played outside,
watched television, and then went to sleep in his bedroom’s king size bed.  He
took them home the next morning.  He has never been accused of similar
offenses.  Moreover, R.M. testified
that Glockzin treated her kindly during his marriage to M.G.  A.M. did not
believe the allegations because she “knew David as a good person.”  No semen or DNA evidence links Glockzin to the
offense.  

Glockzin’s denials of abuse and the absence of
physical evidence do not render the evidence factually insufficient.  “The lack of physical or forensic evidence is a factor for the jury to consider in
weighing the evidence.”  Lee v. State, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), aff’d 206 S.W.3d 620 (Tex. Crim. App. 2006).  Additionally, J.M. testified to facts establishing that
Glockzin committed aggravated sexual assault.  See Tex. Pen. Code Ann. §§ 22.021, 22.011.  Regardless of other testimony and evidence,
J.M.’s testimony alone was all the jury needed to convict Glockzin.  See
Perez, 113 S.W.3d at 838.  The jury was entitled to accept J.M.’s testimony
and not Glockzin’s.  See id.; see also Santellan, 939 S.W.2d at 164; Lacy, 899 S.W.2d at 287; Reed,
991 S.W.2d at 360.  Semen and DNA
were not needed to corroborate J.M.’s testimony.  See Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)
(Vernon 2005).

In summary, “a neutral review of all the
evidence” does not demonstrate that the “proof of guilt is so weak” or the “conflicting
evidence is so strong” that the verdict is “clearly wrong and manifestly
unjust.”  Watson, 204 S.W.3d at 415; Johnson, 23 S.W.3d at 11.  Because
the evidence is factually sufficient to support Glockzin’s conviction for
aggravated sexual assault, we overrule his first issue.

CONSTRUCTIVE AMENDMENT

In his second and third issues, Glockzin complains
that the court’s definition of “sexual contact” in the charge differed from
that in the indictment, constructively amending the indictment and authorizing
conviction on a different theory than alleged in the indictment.

          “Our first duty in analyzing a jury-charge issue is to
decide whether error exists.”  Ngo v.
State, 175
S.W.3d 738, 743 (Tex. Crim. App. 2005).  If error exists, we then
“analyze that error for harm.”  Id.  When, as here, an appellant fails
to object to the charge at trial, he must show egregious harm to prevail on
appeal.  See id. at 743-44;
see also Almanza
v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1985).  “The record must show that
a defendant has suffered actual, rather than merely theoretical, harm.”  Ngo, 175 S.W.3d at 750. 
“Errors that result in egregious harm are those that affect ‘the very basis of
the case,’ ‘deprive the defendant of a valuable right,’ or ‘vitally affect a
defensive theory.’”  Id.
(quoting Hutch
v. State, 922 S.W.2d
166, 171 (Tex. Crim. App. 1996)).  “[T]o determine whether the error
was so egregious that a defendant was denied a fair and impartial trial, a
reviewing court should examine: 1) the entire jury charge; 2) the state of the
evidence; 3) the arguments of counsel; and 4) any other relevant information in
the record.”  Ngo, 175 S.W.3d at 750 n.48;
Almanza, 686 S.W.2d at 171.

          The Penal Code, in relevant part,
states that a person commits indecency with a child by: (1) engaging in sexual contact with
the child; or (2) causing the child to engage in sexual contact.  Tex.
Pen. Code Ann. § 21.11(a) (Vernon 2003).  “Sexual contact” constitutes:

   (1) any touching by a person,
including touching through clothing, of
   the anus, breast, or any part of the genitals of a child; or
 
   (2) any touching of any part of the body of a child,
including touching
   through clothing, with the anus, breast, or any
part of the genitals of
   a person.    

 

Tex. Pen. Code Ann. § 21.11(c) (emphasis added).

In this case, the indictment charged Glockzin
with committing indecency with a child by causing the child to engage in
sexual contact:

And it is further presented in and to said Court
that the said DAVID WAYNE GLOCKZIN in the County of McLennan and State
aforesaid on or about the 29th day of March, 2003, did then and there, with the
intent to arouse or gratify the sexual desire of the Defendant, intentionally
or knowingly cause [J.M.], a child younger than 17 years of age and not
the spouse of the Defendant, to engage in sexual contact by causing
the said [J.M.] to touch the genitals of the Defendant. 

 

(Emphasis added).  The court defined “sexual
contact” according to section 21.11(c)(2):  

…any touching of any part of the body of a
child including touching through clothing, with the anus, breast, or
any part of the genitals of a person with the intent to arouse or
gratify the sexual desire of any person.

 

(Emphasis added).  Glockzin contends that the court
should have defined “sexual contact” according to section 21.11(c)(1) and by
not doing so, the court authorized the jury to convict him for engaging
in sexual contact with J.M., rather than causing J.M. to engage in
sexual contact.

First, Glockzin relies on Lujan v. State for the proposition that “touching” constitutes
“digital
manipulation or manual handling or fondling.”  626
S.W.2d 854, 860 (Tex. App.—San Antonio 1981, pet. ref’d).  However, Lujan
did not “construe
the statute to limit the proscribed conduct to a touching of the child’s
genitals by the hands
of the accused.”  Id. at
859.  “The definition of touching
is not limited to manual or digital sensory perception.”  Ickes v. State, No. 01-96-01540-CR, 1998 Tex. App. Lexis 6590, at
*14 (Tex. App.—Houston [1st Dist.] 1998, pet. ref’d) (not designated for
publication).

Neither is Glockzin’s reliance on Planter v.
State persuasive. 
In Planter, both the indictment and the charge alleged that Planter
“requested, commanded and attempted to induce Lex Baquer to engage in specific
conduct, namely, to kill Bob Fratta.”  9 S.W.3d
156, 159 (Tex. Crim. App. 1999).  However, the evidence showed that
“appellant attempted to request,
command or attempt to induce Bacquer to pay appellant to kill Fratta.”  Id.  The Court held:

Appellant was never charged with or indicted for
the offense that the evidence appears to support: capital murder by soliciting
Bacquer to hire appellant to kill Fratta. The evidence presented at trial does
not comport with the conduct alleged in the indictment and set out in the jury
charge, and the jury verdict cannot, therefore, be supported logically by
either the actual jury charge or the hypothetically-correct jury charge that
was formulated by the Court of Appeals.

 

Id.  Planter was “convicted for
the solicitation of capital murder, but the evidence indicated that he was
actually guilty of capital murder by solicitation, a different offense.”  Benn v. State, 110 S.W.3d 645, 649 (Tex.
App.—Corpus Christi 2003, no pet.); see Planter, 9 S.W.3d at 159.

Unlike Planter, Glockzin was
convicted of an offense supported by the evidence.  As the State explained:

He pulls out his penis, and he rubs it on her
chest.  That is engaging in sexual contact.  The touching of his genitals
doesn’t have to be with her hand.  It’s him causing her to touch his
genitals, and it was touching her chest.  That is indecency with a child.

 

Don’t be confused about that word “touching.”

Contrary to Glockzin’s
argument, this statement did not confuse the issue.  Rather, it illustrates
that Glockzin committed indecency with a child as alleged in the indictment by causing
J.M. to engage in sexual contact by causing her chest to touch his penis.

Furthermore, “the application paragraph of a jury charge is that which authorizes conviction, and an
abstract charge on a theory of law which is not applied to
the facts is insufficient to bring that theory before the jury.”  Campbell v. State, 910 S.W.2d 475, 477 (Tex.
Crim. App. 1995).  “[A]bstract statements of the law that go beyond the allegations in the indictment will
not present reversible error when the court’s application of the law to the facts
effectively restricts the jury’s deliberation to the allegations in
the indictment.”  Grady v. State, 614 S.W.2d 830, 831 (Tex.
Crim. App. 1981)  (citing Toler
v. State,
546 S.W.2d 290, 293-94 (Tex. Crim. App. 1977)); see Sandig v. State, 580 S.W.2d
584, 586 (Tex. Crim. App. 1979); see also Thompson v. State, 12 S.W.3d
915, 921 (Tex. App.—Beaumont 2000, pet. ref’d).

The court’s application paragraph on Count II tracked the
language of the indictment: 

Now if you find from the evidence beyond a
reasonable doubt that on or about the 29th day of March, 2003, in McLennan
County, Texas, the defendant, David Wayne Glockzin, did then and there, with
the intent to arouse or gratify the sexual desire of the Defendant,
intentionally or knowingly cause [J.M.], a child younger than seventeen
years of age and not the spouse of the defendant, to engage in sexual
contact by causing the said [J.M.] to touch the genitals of the
defendant, then you will find the defendant guilty of Indecency with a Child,
as alleged in Count 2 of the indictment.    

          

(Emphasis added).  The court’s
application paragraph “unequivocally restricts the jury’s consideration to only
those allegations contained in the indictment.”  Grady, 614 S.W.2d at 831.  The
charge limits the jury’s consideration to the theory of indecency with a child
by causing the child to engage in sexual conduct as alleged in the indictment. 
Accordingly, the court’s definition of “sexual conduct” did not constructively
amend the indictment as to Count II or authorize conviction on a theory not alleged
in the indictment.  We
overrule Glockzin’s second and third issues.

SUA SPONTE DUTY TO INCLUDE EXTRANEOUS OFFENSE INSTRUCTIONS

 

 Glockzin’s fourth and seventh issues challenge
the court’s failure to sua sponte include an instruction as to extraneous
offenses in the guilt-innocence charge and the punishment charge.

Guilt-Innocence Phase

          Glockzin contends that certain testimony at guilt-innocence introduced
“uncharged extraneous conduct;” thus, the jury should have been instructed
accordingly.

          “[A] trial court has
[a] sua sponte duty” to instruct the jury “on evidence of extraneous
offenses in the guilt-innocence charge when such evidence is admitted.”  Rodgers v State, 180 S.W.3d
716, 723-24 (Tex. App.—Waco 2005, no pet.).  The trial court must so
instruct “regardless
of whether the defendant requests such an instruction or objects to its
omission.”  Id. at 720.[5]  On
appeal, we consider whether the defendant “was harmed by the improper omission
of the instruction, not by the admission of evidence of extraneous offenses.”  Rodgers, 180 S.W.3d at 724; see Ellison
v. State,
86 S.W.3d 226, 228 (Tex. Crim. App. 2002).

Glockzin complains of testimony that he: (1)
rubbed J.M.’s vaginal area; (2) had been drinking on the night of the offense;
and (3) may have invisibly infected J.M. with genital warts, probably via
“genital-to-genital contact,” and so may have abused J.M. in the past.  The State responds that these acts constitute same transaction contextual
evidence.

Same transaction contextual
evidence is admissible where “the facts and circumstances of the instant
offense would make little or no sense without” it.  Rogers
v. State, 853
S.W.2d 29, 33 (Tex. Crim. App. 1993).  “[E]vents do not occur in a
vacuum, and the jury has a right to hear what occurred immediately prior to and
subsequent to the commission of that act so that it may realistically evaluate
the evidence.”  Wesbrook
v. State, 29
S.W.3d 103, 115 (Tex. Crim. App. 2000).  A “jury is entitled to know
all the relevant surrounding facts and circumstances of the charged offense.”  Moreno
v. State, 721
S.W.2d 295, 301 (Tex. Crim. App. 1986).  No limiting instruction is
required for same transaction contextual evidence.  See Camacho v. State, 864 S.W.2d 524, 535 (Tex. Crim. App. 1993).

Evidence that Glockzin rubbed J.M.’s vaginal
area relates to his behavior immediately prior to committing aggravated sexual
assault.  The jury was entitled to hear about Glockzin’s “acts, words, and conduct”
committed at the time of the offense.  Rogers, 853 S.W.2d at 33; see
Wesbrook, 29 S.W.3d at 115. 
For this same reason, the jury was also entitled to hear testimony regarding
Glockzin’s consumption of alcohol on the night of the offense.

Evidence of J.M.’s genital
warts does not
describe any particular act that could constitute an extraneous offense.  Rather,
it explains how
the abuse was discovered, the cause of the blood in J.M.’s underwear, and her
physical condition following the assault.  J.M. testified that she was bleeding
“because he stuck his finger down there.”  This evidence “was intended to aid
the jury in understanding the whole interwoven transaction and to intelligently
perform their function of deciding guilt or innocence…”  Norrid v. State, 925 S.W.2d 342, 349 (Tex.
App.—Fort Worth 1996, no pet.).  The State was also not required to prove that Glockzin
infected J.M.: “the mere fact the victim has a sexually transmitted disease
that the defendant lacks does not negate the defendant’s culpability for
assault.”  Thompson, 85 S.W.3d at 420.

Therefore, because the evidence
of which Glockzin complains constitutes same transaction contextual evidence,
no limiting instruction was required.  See Camacho, 864 S.W.2d at 535; see also Castaldo v. State, 78 S.W.3d 345, 352 (Tex.
Crim. App. 2002). 
We overrule Glockzin’s fourth issue.

Punishment Phase

Glockzin also contends that the
court’s punishment charge should have contained a reasonable doubt instruction
as to extraneous offenses.

A reasonable doubt instruction
must be included “in the punishment
charge regardless of whether the defendant requests it or objects to its
omission.”  Rodgers, 180 S.W.3d at 720; see Huizar
v. State, 12
S.W.3d 479, 484 (Tex. Crim. App. 2000).  Because Glockzin did not
object to omission of the instruction, we will reverse only upon a finding of
egregious harm.  See Bluitt
v. State, 137
S.W.3d 51, 53 (Tex. Crim. App. 2004).

First, Glockzin challenges the omission
of an instruction as to four prior misdemeanor convictions.  “After a finding
of guilt, evidence may be offered by either party as to any matter that the
court deems relevant to sentencing, including but not limited to:” 

1) the prior criminal record of the defendant;
2) the general reputation of the defendant; 3) the character of the defendant;
4) an opinion regarding the reputation of the defendant; 5) the circumstances
of the offense on trial; and, 6) extraneous offenses and bad acts that are
shown beyond a reasonable doubt to have been committed by the defendant or for
which he could be held criminally responsible.

 

Id. at 54 (emphasis added); Tex.
Code Crim. Proc.
art. 37.07 § 3(a)(1) (Vernon 2006). 
In Bluitt, the Court of Criminal Appeals reasoned that the defendant’s criminal record “is not grouped
with extraneous offenses, and therefore we presume that the legislature did not
intend to require the same burden of proof that it attached to extraneous,
unadjudicated offenses.”  Bluitt, 137 S.W.3d at 54.  Therefore, the four misdemeanor convictions admitted as
evidence and to which Glockzin testified are part of his prior criminal record,
and no reasonable doubt instruction was required as to this evidence.  See
id.; see also Tex. Code Crim. Proc. art. 37.07 § 3(a)(1).

Second, Glockzin again
challenges the omission of an instruction regarding evidence of his alcohol
consumption, rubbing J.M.’s vaginal area, and J.M.’s genital warts.  However, we have already found that no instruction was
required because this evidence constitutes same transaction contextual
evidence.  The purpose of this evidence was to assist the jury with “intelligently
perform[ing]” the role of assessing punishment.  Norrid, 925 S.W.2d at 349.  No reasonable doubt instruction was required at
punishment.  See
id.; see also Garza v.
State, 2 S.W.3d
331, 335 (Tex. App.—San Antonio 1999, pet. ref’d); Rachell v. State, No. 14-05-00122-CR, 2006 Tex. App. Lexis 3264, at
*16-17 (Tex. App.—Houston [14th Dist.] April 13, 2006, pet. ref’d) (not
designated for publication).[6]  We overrule Glockzin’s seventh issue.

COMMENT ON THE WEIGHT OF THE EVIDENCE

          In his fifth and sixth issues,
Glockzin argues that the court’s charge improperly commented on the weight of
the evidence as to both counts of the indictment.

          “A
jury charge
should set forth the applicable law of the case without expressing an
opinion on the weight of the evidence, summing up the testimony, or discussing
the facts or using jury argument to arouse the sympathy or cite the passions of
the jury.”  McGowan
v. State, 938
S.W.2d 732, 738 (Tex. App.—Houston [14th Dist.] 1996), aff’d sub. nom. Weightman
v. State, 975
S.W.2d 621 (Tex. Crim. App. 1998); see Tex. Code Crim. Proc. Ann. art. 36.14
(Vernon Supp.
2006); see also Brown v. State, 122 S.W.3d 794, 798 (Tex. Crim. App.
2003).  The court should not “give the jury an instruction that
constitutes a comment on the elements of the alleged offense, or assumes a
disputed fact.”  McGowan, 938 S.W.2d at 738-39; Grady
v. State, 634
S.W.2d 316, 317 (Tex. Crim. App. 1982).

The court instructed the jury
that it should find Glockzin guilty
of aggravated sexual assault if it found that he “did then and there
intentionally or knowingly cause the penetration of the sexual organ of [J.M.],
a child who was then and there younger than fourteen years of age and not
the spouse of the defendant…”  (Emphasis added).  According to Glockzin,
this instruction “assumed the truth” that J.M. was under age fourteen and not
Glockzin’s spouse at the time of the offense.  He argues the paragraph should have
read, “and that [J.M.] was then there a child younger than 14 years of
age, and that [J.M.] was not the spouse of the defendant…”

The court similarly instructed the jury that it should
find Glockzin guilty of indecency with a child if it found that he “did then
and there, with the intent to arouse or gratify the sexual desire of the
Defendant, intentionally or knowingly cause [J.M.], a child younger than
seventeen years of age and not the spouse of the defendant…”  (Emphasis
added).  Glockzin argues that the paragraph should have contained different
language: “and that [J.M.] was then under the age of seventeen years and
not the spouse of the defendant…”

The undisputed evidence at trial establishes
that J.M. was a child under the age of fourteen, and certainly seventeen, and
was not Glockzin’s spouse at the time of the offense.  See McCormick v.
State, No. 10-05-00325-CR, 2007 Tex. App. Lexis 183, at
*23 (Tex. App—Waco Jan. 10, 2007, no pet.) (mem. op.).  Thus, considering the entire charge, we cannot say
that the court impermissibly commented on the elements of the offense or assumed a disputed
fact.  See McGowan, 938 S.W.2d at 739; see
also Grady, 634 S.W.2d at 317.  We overrule his fifth and sixth issues.

INEFFECTIVE ASSISTANCE

          Glockzin argues, in his eighth issue,
that his trial counsel rendered ineffective assistance by failing to: (1)
object to constructive amendment of the indictment and the court’s definition
of “sexual contact;” (2) request a limiting instruction at guilt-innocence and
a reasonable doubt instruction at punishment; and (3) object to the court’s comment
on the weight of the evidence.

Because we have determined that no error was
committed in any of these instances, counsel was not ineffective for failing to
make these objections.  See
Ladd v. State, 3 S.W.3d 547, 565 (Tex. Crim.
App. 1999).  Therefore, we
overrule Glockzin’s eighth issue.

The judgment is affirmed.    

 

          

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief Justice Gray concurs in the judgment
which affirms Glockzin’s convictions without a separate opinion)

Affirmed

Opinion delivered and
filed February 21, 2007 

Publish

[CR25]









[1]           Although there exists some doubt as
to whether Glockzin is J.M.’s biological father, he assumed this role.  He and
J.M.’s mother, M.G., are divorced.  J.M. resides with her mother. 

 





[2]
              J.M. later acknowledged that
the bed covers prevented her from seeing Glockzin’s finger.  

 





[3]           At trial, J.M. used anatomically
correct dolls to demonstrate Glockzin’s actions.  

 





[4]           “Similarly, the mere fact that I.F.
suffered from chlamydia and genital warts, which Appellant did not have, does
not make the evidence supporting the judgment so weak as to be manifestly
unjust and clearly wrong.”  Thompson
v. State, 85 S.W.3d 415, 420 (Tex. App—Fort Worth 2002, no pet.).





[5]           Although the State urges us to do so,
we decline to revisit our holding in Rodgers.  See McCormick v. State, No.
10-05-00325-CR, 2007 Tex. App. Lexis 183, at *10 (Tex. App—Waco Jan. 10, 2007, no pet.) (mem. op.); see also Ex
parte Townsend,
137 S.W.3d 79, 82 (Tex. Crim. App. 2004); Awadelkariem
v. State, 974
S.W.2d 721, 724-26 (Tex. Crim. App. 1998).





[6]           “The Texas Court of
Criminal Appeals has not addressed whether a
beyond-a-reasonable-doubt instruction is required when evidence of other
offenses is admitted during the guilt/innocence phase and reoffered at the
punishment phase of a trial as same
transaction contextual evidence.”  Moore v. State, 165 S.W.3d 118,
124 (Tex. App.—Fort Worth 2005, no pet.).  In Moore, the Fort Worth Court “hesitate[d] to
read into [article 37.07] an exception to the burden of proof for extraneous
offenses or bad acts offered as same transaction contextual evidence.”  Id. at 125.  The Court did “not
believe that there is a ‘necessity’ of showing the surrounding circumstances in
order to present a complete picture to the jury at the punishment phase.”  Id.  We disagree.  The evidence assists the jury with assessing punishment.  See
Norrid v. State, 925 S.W.2d 342, 349 (Tex.
App.—Fort Worth 1996, no pet.).  Neither do we see a reason
to disregard cases holding that a reasonable doubt instruction is not required
at punishment for same transaction contextual evidence.